UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
ROBERT SANTORO,

                    Petitioner,

  -against-

UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------------------x

MEMORANDUM AND ORDER
01 CR 416 (ILG)
03 CR 1000
04 CV 5459

GLASSER, United States District Judge:

      The petitioner has filed this motion pursuant to 28 U.S.C. § 2255 seeking an order that would require him to be resentenced in the wake of <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), in the two cases in which he was sentenced, <u>United States v. Santoro</u>, 01 Cr 416(S-6), and <u>United States v. Santoro</u>, 03 Cr 1000, to terms of 63 and 78 months concurrently and respectively. In each case, the petitioner entered into an agreement with the government by the terms of which he waived his right to appeal or collaterally challenge the sentences imposed. At the time this motion was filed, <u>Booker</u> and its companion case, <u>United States v. Fanfan</u>, were pending appellate review in the Supreme Court.

      The gravamen of the petitioner's motion, in essence, is that enhancements which drove his guidelines range upwards, were not of facts which were submitted to and found by a jury and therefore fatally collided with <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and with the rights granted him by the Sixth Amendment to the United States Constitution as announced in <u>Booker</u>. It then follows, he contends, that his waiver of that fundamental constitutional right was offered neither knowingly not intentionally and its invalidity should be presumed.

## Background

Following a trial to the court and jury at which he was represented by experienced counsel, the petitioner was found guilty on November 18, 2002, of conspiring to commit wire fraud, wire fraud, mail fraud, money laundering, making a false statement and perjury in violation of 18 U.S.C. §§ 371, 1343, 1341, 1956, 1001 and 1621. 01 Cr 416(S-6). The overreaching conduct to which his conviction gave rise was his operation of the City Check Cashing Company to launder stolen checks and checks flowing from crimes committed by the Genovese Organized Crime Family.

In anticipation of his sentence, the government submitted a Memorandum asserting that Santoro laundered millions of dollars for organized crime which, it continued, was conduct relevant to the conduct proved at trial and urged that his Criminal History Category should be enhanced accordingly.

Thereafter, on September 5, 2003, Santoro waived indictment and pleaded guilty to a single count Information in which he was charged with a conspiracy to launder money stolen from the Metropolitan Transportation Authority. On the same day, Santoro entered into two agreements with the government pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure. In one, the parties stipulated to a Sentencing Guideline range of 63 - 78 months in the case in which he was convicted after trial (the trial case), and in which Santoro agreed that he will not file an appeal or otherwise challenge his conviction or sentence if the sentence imposed did not exceed 78 months. It was also agreed that the stipulation was contingent upon his pleading to an Information in 03 Cr 1000 and providing the Court accepted the 11(c)(1)(C) plea in

2

accord with 11(c)(3)(A). In the second, Santoro agreed to plead guilty to the Information and the parties again stipulated to a higher Guideline range of 78 - 97 months to be imposed concurrently with the sentence imposed in the trial case, and Santoro again waived his right to appeal or otherwise challenge his conviction or sentence not greater than 97 months. It was also agreed that the parties could advocate as to where within the agreed upon Guideline range the sentence should fall and that neither would move for a departure either upwards or downwards from that range. Responsive to Santoro's claim regarding the validity of his agreements in which he waived his right to appeal or challenge the conviction or his sentence, are the following excerpts from the proceeding on September 5, 2003:

> THE COURT: Mr. Santoro, you just swore to tell the truth. So everything that you are going to say to me this morning should be truthful. It is a crime of perjury to tell a lie after you swore to tell the truth.
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> \* \* \*
>
> THE COURT: Have you discussed that plea agreement with Mr. Lundsten?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: Would you like me to review it with you?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: There is one paragraph in this plea agreement which I want to make sure that you understand. Actually, there are two aspects of this plea agreement that I want to make sure that you understand.

The government and you have agreed that the sentence which is imposed in this case will run concurrently with the sentence in the case which I tried and in which you were found guilty, I think it was earlier this year or late of last year. I don't recall.

MR. WEINSTEIN: It was last November, Your Honor.

THE COURT: Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: The sentence that is being imposed here by the terms of this agreement is to run concurrently with the sentence which will be imposed in connection with the case which was tried in which you were found guilty.
    Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: In paragraph four of this agreement, you have agreed that you won't file an appeal or otherwise challenge the conviction or the sentence in the event that the sentence imposed is not greater than 97 months.
    Did you understand and agree to that?

THE DEFENDANT: Yes, I have.

THE COURT: Do you understand what it means to give up your right to appeal?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: You are giving up that right voluntarily.

THE DEFENDANT: I am, Your Honor.

THE COURT: You are also giving up the right to question the validity of the proceeding here this morning.
    Do you understand that?

THE DEFENDANT: Yes, I do.

*   *   *

>THE COURT: Mr. Lundsten, you have gone over this agreement with Mr. Santoro.
>
>MR. LUNDSTEN: Yes, I have, Your Honor.
>
>THE COURT: Is there any question about his understanding it?
>
>MR. LUNDSTEN: No. I believe Mr. Santoro fully understands the plea agreement.
>
>THE COURT: At the end of this agreement, Mr. Santoro, there is a provision which says that you have read the entire agreement, you have discussed it with your lawyer, and you understand all of its terms, and you have entered into it knowingly and voluntarily.
>     Is that correct?
>
>THE DEFENDANT: That is true, Your Honor.

Tr. at 2, 16-18, 18-19.

Sentences in both cases were imposed on December 15, 2003. For the crimes of which he was convicted after trial, the Court imposed a sentence of 63 months, the bottom of the agreed upon Guideline range. For the crime of which he pleaded guilty, the Court imposed a sentence of 78 months, the bottom of that agreed upon Guideline range and to run concurrently with the preceding sentence.

## Discussion

A.  The Validity of His Plea and His Waiver

The acknowledgment of the understanding and voluntariness of his waivers of his right to appeal his sentence and to challenge the validity of his plea are established beyond peradventure of a doubt by his own words as set forth above.

5

B.     The Effect of Booker

Given the validity of his plea, there is no suggestion in it that it was not intended to apply to issues arising after the waiver. In Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001), the Court expressed it thus: "We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into." Having entered into his plea agreement after Apprendi but before Booker, it is assumed that Santoro was aware of his Apprendi rights at the time of his plea agreement. His unawareness of his rights under Booker is irrelevant. "His inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver. On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and agreements." United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005). The Morgan Court concluded at 138, that an appeal waiver is enforceable against a Booker claim. See also United States v. Haynes, 412 F.3d 37 (2d Cir. 2005); United States v. Roque, 421 F.3d 118 (2d Cir. 2005). It necessarily must follow that the waiver being enforceable against a Booker claim on direct appeal, is also enforceable against a motion pursuant to 28 U.S.C. § 2255.

C.     Retroactivity of Booker

The retroactivity of Booker has been foreclosed by Guzman v. United States, 404 F.3d 139 (2d Cir. 2005), in which the court decided that "Booker is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued." 404 F.3d at 144.

The foregoing makes it unnecessary to discuss the applicability of the one year limitation for bringing motions pursuant to § 2255.

The petition is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
November 29, 2005

S/ _____
I. Leo Glasser